UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EDWIN SHEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:07-CV-22 (CEJ) |
| | ) | |
| JAMES PURKETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the defendants' separate motions for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff has filed responses in opposition to the motions and the issues are fully briefed.

Plaintiff Edwin Shead is an inmate incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC). He alleges that defendants were deliberately indifferent to his serious medical needs and that he was subjected to retaliatory discipline. Plaintiff filed this action pursuant to 42 U.S.C. § 1983, naming as defendants James Purkett, superintendent; Correctional Medical Services, Inc. (CMS); Kim Randolph; Dr. Marcos Nalagan; Nurse Sheila Ward; Nurse Pam Lukehart; and John/Jane Doe.[1] Defendant Purkett moves for summary judgment, arguing that plaintiff has failed to establish that his constitutional rights were violated. Defendants Randolph, Nalagan, Ward, Lukehart and CMS (the CMS defendants) move for summary judgment, arguing that plaintiff cannot establish that they were deliberately indifferent to a serious medical need.

---

[1]In his first amended complaint, plaintiff alleges that defendant John/Jane Doe "makes decisions regarding prisoner assignments to administrative segregation at ERDCC." Defendant Purkett argues that claims against this defendant should be dismissed because plaintiff has not identified or served this defendant. Plaintiff did not respond to this argument. The Court will dismiss the claims against the John/Jane Doe defendant for failure to prosecute.

I.      Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).  Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

II.     Background

    A.      Medical Care

Plaintiff entered ERDCC in March 2005.  In March and April 2005, plaintiff submitted Medical Services Requests (MSRs) complaining that the prison-issued shoes provided no arch support.  On April 15, 2005, Nurse Brenda Feeler responded to

plaintiff's MSRs.[2] She noted that, although his feet were flat, they showed no signs of redness or infection. She recommended that he purchase insoles at the canteen. Plaintiff testified at deposition that the canteen did not supply insoles, but he eventually obtained them from a friend. Plaintiff was seen frequently between April 2005 and October 2005 for treatment of ingrown or infected toenails; he does not allege any claims arising from the treatment of his toenails.

On February 28, 2006, defendant Nalagan saw plaintiff for his foot complaints. Plaintiff reported that the arch supports did not help. Dr. Nalagan observed no foot deformity or callus and stated that plaintiff did not meet the medical criteria for special shoes. On September 29, 2006, defendant Ward saw plaintiff in connection with his complaints of foot pain. Plaintiff reported that he used to wear "special" shoes before coming to prison and that the prison-issued shoes were inadequate. He stated he had the money to buy special shoes "if it is alright with the dr." He also requested an x-ray of a prior foot injury. Defendant Ward observed that plaintiff's shoes rubbed and caused swelling of the big toe. Plaintiff was given Tylenol for pain.

On October 29, 2006, plaintiff wrote a letter to defendant Purkett seeking permission to order shoes, stating in relevant part that, "The Doctor said he couldn't authorize[] me to order from a vendor even [though] I need it. He said that was only your call." On November 16, 2006, defendant Randolph, the health services administrator, wrote to plaintiff in response to his request for special shoes. Defendant Randolph noted that defendant Nalagan had determined that special shoes were not medically necessary. She advised plaintiff to submit another MSR if he wanted his

---

[2]Plaintiff's medical records indicate that he was seen by medical staff several times between his admission date and this contact with Ms. Feeler. During these contacts, plaintiff received HIV and PPD testing and treatment for a headache and an infected toe.

request to be re-evaluated. On December 3, 2006, plaintiff filed an offender grievance regarding his desire to obtain comfortable shoes. Plaintiff was told in response that a physician had determined that his condition did not meet the criteria for special footwear. His grievance appeal was denied on the same basis.

On December 5, 2006, plaintiff submitted an MSR for a "knot" that was causing him stomach pain. Nurse Pamela Yancey examined plaintiff that day. Plaintiff explained that the knot had appeared after exercising. Ms. Yancey observed that the knot reduced when plaintiff lay on his back and relaxed. She diagnosed the knot as a hernia and told plaintiff to increase his fluids and, for the next six weeks, to avoid strenuous activity and lifting more than five pounds.

Defendant Nalagan evaluated plaintiff's hernia on December 28, 2006. Plaintiff reported that he periodically had a lump that he was able to push back in; he denied experiencing pain, nausea or vomiting. Defendant Nalagan's assessment was that plaintiff had a reducible, nontender inguinal hernia. He was again advised to avoid heavy lifting and increase his fluid intake. Defendant Nalagan also instructed plaintiff to report any constipation, nausea, vomiting or pain.

Over the next several weeks, medical staff saw plaintiff for a mental health assessment, back pain, vomiting, foot pain, and dental needs. On January 31, 2007, plaintiff was seen by nurse Dianne Czarnecki. No hernia was evident at the time and plaintiff denied vomiting in the last two days. Ms. Czarnecki informed plaintiff that he could purchase shoes and instructed him to keep his scheduled doctor's appointment.

On February 5, 2007, Dr. Charles Chastain saw plaintiff. He observed that the hernia had grown in size and was no longer reducible. He requested a surgical referral. Dr. Chastain testified at deposition that plaintiff received "an unusually rapid appointment" with a surgeon. Dr. Chastain provided medication for constipation,

nausea, and pain. On March 1, 2007, plaintiff was issued a jock strap. On March 20, 2007, Dr. Ben Gaddy evaluated plaintiff's hernia, which filled the scrotal sac and interfered with activities of daily living. Dr. Gaddy requested authorization to perform surgical repair, which was approved. Plaintiff was issued a medical lay-in from prison duties from March 28, 2007 through May 1, 2007. Surgery was successfully completed on April 4, 2007.

On May 18, 2007, nurse Elizabeth Whitener told plaintiff that the department of corrections does not purchase special shoes for inmates. On July 25, 2007, Ms. Whitener again examined plaintiff's feet. She observed no redness, deformity, blisters or edema. In response to his renewed request for shoes, she explained again that he could not obtain shoes through the medical department. When he responded that other inmates had received special shoes, she clarified that shoes were provided for extreme cases. He asked for and received Tylenol for pain.

On August 24, 2007, Ian Wallace advised plaintiff that he could purchase shoes with arch supports with a written prescription from the medical department. On September 13, 2007, Dr. Nalagan authorized plaintiff to purchase shoes with arch supports. Plaintiff testified that his family purchased three pairs of athletic shoes for him. These shoes reduced his discomfort.

Plaintiff was evaluated by John M. Dailey, M.D., a foot and ankle surgeon, for the purposes of this lawsuit. Dr. Dailey observed plaintiff walking, both with and without shoes, for a distance of about 75 yards. Dr. Dailey stated that plaintiff did not show any signs of pain when walking; *i.e.*, plaintiff did not limp or change his gait. Plaintiff has a number of structural deformities, including a rigid flat foot and a discrepancy in the lengths of his legs. Both conditions predated plaintiff's admission to prison and were not caused by prison-issue foot wear. Plaintiff also has callus

buildup, which Dr. Dailey testified is the result of his feet not bearing weight appropriately – the calluses form to protect the pressure points. According to Dr. Dailey, conservative treatment of plaintiff's conditions would consist of a change in shoe gear and an orthotic or other insert to add support. Dr. Dailey did not believe that the athletic shoes that plaintiff's family purchased for him were sufficient to treat his conditions. Plaintiff's activities include basketball and baseball; these can cause increased pain for someone with his conditions, with or without the use of orthotics. The nine- to twelve-month delay in obtaining treatment for his foot pain would not have worsened plaintiff's rigid flat foot or disparity in leg length; the delay would have prolonged plaintiff's discomfort, however.

### B. Disciplinary Issue

On October 13, 2006, a weapon was found in plaintiff's cell. Plaintiff and his cellmate received conduct violations. Following a hearing, plaintiff was assigned to disciplinary segregation for thirty days and was referred to the administrative segregation hearing committee. The committee assigned plaintiff to administrative segregation on October 25, 2006, and extended his assignment on November 21, 2006. On January 8, 2007, plaintiff filed this action. Plaintiff's administrative segregation was continued again on January 17, 2007. He was released to general population on February 7, 2007.

## III. Discussion

### A. Plaintiff's Medical Claims

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban against cruel and unusual punishments. Farmer v. Brennan, 511 U.S. 825, 828 (1994). A claim of deliberate indifference has both an objective and a subjective component. See id. at 838-39. Thus, the relevant questions are: (1)

whether plaintiff had a serious medical need and (2) whether the defendants had knowledge of such serious medical need but nevertheless disregarded it. Nelson v. Correctional Medical Services, 583 F.3d 522, 529 (8th Cir. 2009).

Plaintiff contends that his flat feet constituted a serious medical condition and that the delay in permitting him to obtain "special shoes" violated the Eighth Amendment. A serious medical need is one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. Vaughn v. Greene County, Ark., 438 F.3d 845, 851 (8th Cir. 2006). When an inmate alleges that a delay in medical treatment constituted a constitutional deprivation, "the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997). An inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs. Id.

Defendants argue that plaintiff has presented no evidence that his flat feet constitute a serious medical condition. Assuming without deciding that plaintiff can satisfy this element, he cannot establish that he suffered a detrimental effect from the delay in providing the shoes he sought. First, both Dr. Nalagan and Dr. Dailey testified that the shoes were not medically necessary to address plaintiff's condition. Second, the delay did not cause a worsening of his flat feet or disparity in leg length. Plaintiff argues that he suffered unnecessary pain, but he was provided analgesics on request. Defendants have established that they are entitled to summary judgment on plaintiff's claim arising from his flat feet.

Plaintiff's hernia constituted a serious medical condition. Again, however, his claim that he suffered an unconstitutional delay in treatment is unsupported by

evidence. First, there is no evidence of deliberate delay: When defendant Nalagan evaluated plaintiff's hernia on December 28, 2006, it was reducible and surgery was not indicated. On January 31, 2007, the hernia was not evident upon examination. By February 5, 2007, however, when Dr. Chastain examined plaintiff, the hernia was no longer reducible and had increased in size. Dr. Chastain sought and received prompt authorization for referral to a surgeon, who completed the evaluation on March 20, 2007, and performed the surgery on April 4, 2007. Second, plaintiff has not identified any detrimental effects of the alleged delay; he suffered discomfort until the surgery occurred but he was excused from prison duties and was provided with analgesics in the interim. Finally, there is no evidence that any defendant disregarded plaintiff's hernia: he was examined on a regular basis, was educated regarding the signs and symptoms of a worsening condition, and was treated appropriately when the worsening occurred. Defendants are entitled to summary judgment on plaintiff's claims arising from his hernia.

B.  **Retaliation Claim**

Plaintiff alleges that defendant Purkett caused the hearing committee to extend his assignment to administrative segregation in retaliation for the filing of this suit.[3] The factual basis for plaintiff's retaliation claim is his contention that his cellmate's period of segregation for the offense was shorter.

Prison officials may not retaliate against an inmate for filing legal actions in the exercise of his constitutional right of access to the courts. Goff v. Burton, 7 F.3d 734, 736 (8th Cir. 1993). A prison official's action violates § 1983 when performed in

---

[3]Plaintiff's pro se complaint, filed on January 8, 2007, asserted only claims regarding his medical care. His claim against defendant Purkett was based solely on *respondeat superior*, and was dismissed for failure to state a claim upon which relief can be granted. The Court subsequently appointed counsel who filed an amended complaint that included the retaliation claim.

retaliation for "the exercise of a constitutionally protected right . . . even if the act, when taken for a different reason, would have been proper." Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990) (citations omitted). In order to succeed on his claim, plaintiff must show that, but for his constitutionally-protected conduct, defendant would not have retaliated against him. See Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999) (retaliatory transfer). In this case, plaintiff has presented no evidence that defendant Purkett knew of the original lawsuit — the Court dismissed the action with respect to Purkett before service of process. Second, there is no evidence that defendant Purkett played any role in the decision to extend plaintiff's assignment to administrative segregation. Finally, defendant asserts, and plaintiff does not contest, that this claim is unexhausted as plaintiff did not file a grievance. Defendant Purkett is entitled to summary judgment on the retaliation claim.

The Court extends its appreciation to appointed counsel for their services in this case.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant James Purkett for summary judgment [Doc. #74] is **granted**.

**IT IS FURTHER ORDERED** that the motion of defendants Correctional Medical Services, Inc.; Kim Randolph; Dr. Marcos Nalagan; Nurse Sheila Ward; and Nurse Pam Lukehart for summary judgment [Doc. #76] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's claim against defendant John/Jane Doe is **dismissed** for failure to prosecute.

_____

CAROL E. JACKSON
                                        UNITED STATES DISTRICT JUDGE

Dated this 31st day of December, 2009.